IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDRE DEMETRIUS MCLEOD,<br><br>*Defendant*. | **UNDER SEAL**<br><br>Criminal No. 1:26-mj-363 |

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Ashleigh Oakley, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and therefore, I am "an investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for federal offenses. I am further authorized to execute search warrants issued under the authority of the United States.

2. I have been employed with the ATF since July 2014 and am currently assigned to the Washington Field Division, Falls Church Field Office. Prior to joining the ATF, I completed my Bachelor of Science degree in Criminal Justice at Virginia Commonwealth University. Since joining ATF, I have successfully completed numerous training programs hosted by the ATF and other local, state, and federal law enforcement agencies and organizations, including the Federal Law Enforcement Training Center's 12-week Criminal Investigator Training Program and the 14-week ATF Special Agent Basic Training Program. Through my training and experience, I have

become familiar with the provisions of the federal firearms laws administered under Title 18 and Title 26 of the United States Code. I have personally conducted and participated in investigations that have resulted in the arrest and conviction of numerous individuals responsible for violations of the United States Code, including firearms offenses. I have been involved in the application for and execution of arrest and search warrants for firearm-related offenses resulting in the prosecution and conviction of individuals and the seizure of firearms, ammunition, and other evidence of criminal activity.

3. I make this affidavit in support of a criminal complaint and arrest warrant charging that on or about November 17, 2025, within the Eastern District of Virginia, the defendant, **ANDRE DEMETRIUS MCLEOD** (“**MCLEOD**”), did knowingly make a false statement with respect to the purchase of a firearm, specifically, a Glock, model 22, .40 caliber, pistol, bearing serial number XXV720, in violation of Title 18, United States Code, Section 922(a)(6).

4. The facts in this affidavit come from my personal observations and knowledge, my review of documents and other evidence, my training and experience, and information obtained from other agents, U.S. Government personnel, police officers, and witnesses. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of records, documents, and other physical evidence obtained during the course of this investigation. This affidavit is intended to show merely that there is probable cause for the requested complaint and arrest warrant and does not set forth all of my or the government’s knowledge about this matter. I have not, however, intentionally excluded any information known to me that I believe would defeat a determination of probable cause.

## PROBABLE CAUSE

5. Through my training and experience, I am aware that federal law prohibits Federal Firearms Licensees ("FFLs") from selling a firearm to a non-licensee purchaser "unless the [FFL]

records the transaction on a firearms transaction record, Form 4473." 27 C.F.R. § 478.124(a). "Form 4473" refers to the ATF Firearms Transaction Record. I am further aware that the law requires FFLs to retain "as part of the required records, each Form 4473 obtained in the course of transferring custody of the firearms." 27 C.F.R. § 478.124(b). Accordingly, any false statement a purchaser makes on a Form 4473 pertains to information an FFL is required by law to maintain.

6. Through my training and experience, I am also familiar with the methods used by individuals involved in straw purchasing and firearms trafficking. A straw purchase involves an intermediary—the straw purchaser—buying the firearm on behalf of another person—the actual buyer—who is legally prohibited from buying or receiving the firearm. A critical component of a straw purchase involves the straw purchaser making a false statement on Form 4473 by identifying themselves as the "actual transferee/buyer of the firearm(s) listed" in response to question 21a on the form.

7. Since January 2026, the Stafford County Sheriff's Office ("SCSO") has been investigating a shooting involving a juvenile, D.B., who told law enforcement that he fired one shot during the incident and discarded the firearm in a wooded area nearby. Shortly thereafter, SCSO deputies searched the area described by D.B. and recovered a Glock, model 22, .40 caliber, pistol, bearing serial number XXV720 (hereinafter the "Glock 22"). As detailed further in this affidavit, the investigation has revealed that **MCLEOD** provided false information on Form 4773 when purchasing the Glock 22 for D.B. and that **MCLEOD** knew or had reason to believe that D.B. was a juvenile, making it unlawful for **MCLEOD** to sell, deliver, or otherwise transfer a handgun to D.B., in violation of Title 18, United States Code, Section 922(x)(1).

8. On or about January 3, 2026, at approximately 4:25 p.m., the SCSO was dispatched to 1401 Providence Street in Stafford County, Virginia 22554, within the Eastern District of

Virginia, in response to multiple reports of gunshots in the area. When SCSO patrol units arrived on scene, they located two individuals suffering from gunshot wounds who were then transported to the hospital. A juvenile, D.B., was identified as potentially being involved in the shooting and interviewed by SCSO Detective Scott, in the presence of his mother. During the interview, D.B. admitted to pulling out a firearm during a physical altercation and shooting it once, which was consistent with evidence located at the crime scene, including a single cartridge casing that was found near the vehicle where the altercation and shooting occurred. D.B. further told Detective Scott that after the shooting, he tossed the firearm in the woods nearby. During this interview, D.B. was observed scrolling through his cell phone and appeared to be deleting content from the device. Based on this and other evidence developed during the investigation, D.B.'s cell phone was seized by the SCSO.

9. Deputies on scene located the Glock 22 in a wooded area near where the shooting occurred. The firearm was consistent in caliber to the cartridge casing that had been recovered from the crime scene, and the magazine also appeared to be one round of ammunition short of being fully loaded, which is consistent with it having fired a single shot during the shooting incident.

10. D.B. was detained and transported to SCSO Headquarters, where he was further interviewed by SCSO Detective Hinson, in the presence of his mother. During the interview, D.B. told Det. Hinson that he shot the victim in the leg, confirmed that the cell phone seized by the SCSO was his, and unlocked the device for Det. Hinson. D.B. also told Det. Hinson that the phone contained images of D.B. with the Glock 22 involved in the shooting, which he claimed to have taken from a vehicle in Woodbridge, Virginia, sometime around Thanksgiving 2025.

11. On or about January 9, 2026, Det. Hinson obtained a Virginia state search warrant for D.B.'s cell phone, which authorized the extraction of data from the device and the search of the extracted data for evidence of Aggravated Malicious Wounding, in violation of Va. Code § 18.2-51.2, Use of a Firearm in Commission of a Felony, in violation of Va. Code § 18.2-53.1, and Receiving a Stolen Firearm, in violation of Va. Code § 18.2-108.1. A review of the data extracted from the D.B.'s cell phone revealed a text message conversation with a contact saved in the phone as "Dre" with the phone number (571) 369-3485. A query of law enforcement databases showed that this phone number was associated with **MCLEOD**. During the text message conversation, D.B. asks "Dre" to purchase a firearm for him.

12. Specifically, on or about October 28, 2025, D.B. sent "Dre" the following message, "Bra still got dat xd40?" Through my training and experience, I know that "xd40" refers to a Springfield Armory XD-40, which is a polymer-framed, striker-fired, pistol, chambered in .40 caliber. "Dre" responded to D.B. with, "Bouda ask em now." On or about October 29, 2025, D.B. sent "Dre" a link to https://gun.deals/node/1010276 and a gun advertisement titled "USED – Glock 22 Gen 4 .40 S&W Police Trade In - $299.99." On or about October 30, 2025, "Dre" sent screenshots to D.B. showing that the firearm had been purchased for $345.78. The screenshots, which are depicted below, show the order number and total amount paid, as well as an image of what appears to be the top of **MCLEOD's** face, in the top corner of the screen, indicating that screenshot was taken during a video call.







13. D.B. and "Dre" continued to message back and forth until on or about November 5, 2025, when "Dre" confirmed the firearm had been shipped to the Federal Firearms Licensee (FFL), All Shooter's Tactical, Inc., located at 3310 Noble Pond Way, Suite 108, Woodbridge, Virginia, within the Eastern District of Virginia. "Dre" also sent D.B. a screenshot of an email showing the firearm had shipped, which is depicted below.




14. After November 5, 2025, D.B. and "Dre" continued to exchange text messages. In the messages, D.B. inquired almost daily about whether the Glock 22 had arrived and asked when "Dre" was going to pick it up. Based upon my review of these messages, it appears that on or about November 17, 2025, "Dre" picked up the firearm from All Shooters Tactical, Inc. in Woodbridge, Virginia, within the Eastern District of Virginia. Later that day, "Dre" shared his location with D.B., who responded with "20 min and ima step in yo shir q go my peoples in a whip," indicating that D.B. came to "Dre's" location to receive the firearm from him.

15. On or about January 3, 2026, less than 30 minutes after the aforementioned shooting in Stafford County, Virginia, D.B. sent "Dre" the following message: "Jus got into sum lul shit" and later asked "Dre" to report the firearm as stolen. A review of the cell phone data also shows

that the user of the phone deleted this message on or about January 3, 2026, at 5:26 p.m., which is consistent with the observations made by law enforcement of D.B. on that date.

16. In approximately February 2026, SCSO Detective Jeremy Hinson informed the ATF of the alleged straw purchase by **MCLEOD**. Since then, the ATF has assisted the SCSO and Prince William County Police Department ("PWCPD") with the investigation of **MCLEOD**, including by tracing the purchase of the Glock 22 and obtaining records related to the purchase.

17. On or about February 27, 2026, I obtained the ATF Firearm Transaction Record, Form 4473, from All Shooters Tactical, Inc., the FFL that facilitated the transfer of the firearm to "Dre." These documents show that **MCLEOD** purchased the Glock 22, as advertised in the screenshot sent by D.B. to "Dre," and that **MCLEOD** took possession of the firearm on or about November 17, 2025. **MCLEOD** also identified himself as the "actual transferee/buyer of the firearm(s) listed" in response to question 21a.

18. On Form 4473, **MCLEOD** also provided the phone number (571) 369-3485, which is the same phone number for the contact saved as "Dre" in D.B.'s cell phone, and **MCLEOD** listed his address as 12625 Dulcinea Place, Woodbridge, Virginia 22192 (hereinafter "**MCLEOD's** residence").

19. By comparing the manufacturer, model, caliber, and serial number, this firearm appears to be the Glock 22 that was recovered by the SCSO on or about January 3, 2026. The Glock 22 was later determined to be the firearm used by D.B. during the shooting on or about January 3, 2026, based upon forensic analysis conducted by the Virginia Department of Forensic Science documented in the certificate of analysis, dated May 21, 2026, with FS Lab # C26-483.

20. On or about March 4, 2026, a Virginia magistrate issued a state search warrant authorizing the search of **MCLEOD's** residence for evidence of Selling, Bartering, Giving, or

Furnishing Firearms to a Prohibited Person, in violation Va. Code § 18.2-308.2:1 and Purchasing a Firearm with the Intent to Resell or Otherwise Provide to a Person Known to be Ineligible to Purchase or Otherwise Receive a Firearm, in violation Va. Code § 18.2-308.2:2, including firearms, ammunition, and instrumentalities associated with the ownership and possession of firearms and ammunition including packaging, receipts, cell phones, holsters, gun cases, and firearms tools. The PWCPD executed the warrant on March 5, 2026, and seized firearms, ammunition, firearm accessories, cartridge casings, and cell phones pursuant to the warrant.

21. During the search of **MCLEOD's** residence, law enforcement seized multiple empty firearm boxes including one for a Canik, model TP-9, 9mm caliber, pistol, with serial number 20CB17517. Additional investigation and firearms tracing conducted by the ATF determined that this firearm was recovered by the Metropolitan Police Department from an individual, C.E., in Washington, D.C. on or about December 21, 2024. I then obtained the Form 4473 for the purchase of this firearm from Woodbridge Gold & Pawn, dated May 1, 2023, which listed **MCLEOD** as the purchaser of the firearm. Therefore, I have probable cause to believe that **MCLEOD** has engaged in multiple straw purchases within the Eastern District of Virginia.

22. During the execution of the search warrant at **MCLEOD's** residence, a cell phone was located inside **MCLEOD's** bedroom and seized by law enforcement. **MCLEOD** identified the cell phone as his and provided law enforcement with the passcode to unlock the device. During a post-*Miranda* interview, **MCLEOD** admitted to law enforcement that he purchased a firearm for D.B. and that he knew D.B. was unable to purchase the firearm. **MCLEOD** also confirmed the authenticity of the text messages between him and D.B. leading up to the purchase of the firearm.

23. On or about July 16, 2026, I obtained a federal search warrant (1:26-sw-615) from the Honorable William B. Porter, United States Magistrate Judge for the Easter District of Virginia,

which authorized the extraction of data from **MCLEOD's** cell phone and the search of the extracted data for evidence of violations of Title 18, United States Code, Sections 922(a)(6) (false statements in connection with the purchase of a firearm) and 922(x)(1) (sale or transfer of handgun to a juvenile). A review of the extracted data from **MCLEOD's** cell phone confirmed that the aforementioned text messages between D.B. and "Dre" (**MCLEOD)** arranging the purchase of the Glock 22 were present on the device.

## CONCLUSION

24. Based on the foregoing, I respectfully submit that there is probable cause to believe that on or about November 17, 2025, within the Eastern District of Virginia, the defendant, **MCLEOD**, did knowingly make a false statement with respect to the purchase of a firearm, specifically, a Glock, model 22, .40 caliber, pistol, bearing serial number XXV720, in violation of Title 18, United States Code, Section 922(a)(6).

Respectfully submitted,

Ashleigh Oakley

Ashleigh Oakley
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on September 16, 2026.

Digitally signed by Ivan Davis
Date: 2026.09.16 14:27:22 -04'00'

The Honorable Ivan D. Davis
United States Magistrate Judge
Alexandria, Virginia